STATE of Missouri, Respondent,

v.

Steve A. DAVIDSON, Appellant.

Steve A. DAVIDSON, Movant/Appellant,

v.

STATE of Missouri, Respondent.

Nos. 66712, 69682.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 11, 1997.

Gary E. Brotherton, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, Jefferson City, for Respondent.

KAROHL, Judge.

Defendant, Steve A. Davidson, appeals after sentencing on jury verdicts convicting him of: (1) murder in the first degree of Essie Marshall and Milton Hutton; (2) murder in the second degree of Marvin Marshall; and (3) three counts of armed criminal action. He also appeals denial, after an evidentiary hearing, of his Rule 29.15 motion alleging ineffective assistance of counsel. We consider both appeals.

Marvin Marshall lived with his grandmother, Issie Lee Townsend, his mother, Essie Marshall, and her boyfriend, Milton Hutton. On and off between 1987 and 1993, Marvin's girlfriend, Mary Hossenlopp, also lived with them. Defendant, Marvin's cousin, lived a couple of blocks away.

Marvin and Mary had two children. Mary had a third child by defendant in 1990. This fact caused conflict between the two men. Defendant and Marvin threatened each other verbally. Defendant testified Marvin threatened to kill him many times and during one altercation sucker-punched him in the eye. There was evidence defendant drove by Marvin's house shouting threats and later taunt-

ed him in person while armed with an automatic weapon.

On October 7, 1992, defendant and Marvin had a confrontation. Defendant left and went home to watch television. Marvin went home and awoke Mary from a nap. He asked her for his baseball bat. Essie came into the bedroom with a hammer. Marvin and Essie left for defendant's house. According to Mary, Milton followed.

Defendant testified. He told the jury he heard Marvin and Essie yelling at him to come outside. He looked out the window but returned to his back room where he was watching television. Defendant's brother, Marcus, his cousin, Kevin, and his friend, Terron Woodson, were with him in the house. The yelling continued. Marcus and Kevin went outside and told Marvin and Essie to leave. However, instead of leaving, Marvin banged on the door and yelled for defendant to come out and fight.

The yelling and shouting lasted about a half an hour. Marcus, Kevin and Terron again went outside to tell them to leave. Defendant went outside and told them to get off his property. Marvin was closest to defendant, Essie was standing in the front yard and Milton was across the street. They were armed with a bat, hammer and pipe. Some witnesses testified they were unarmed.

Marvin, Essie and Milton refused defendant's request to leave. Defendant went back into his home. He did not call the police. He armed himself with a rifle. He went back onto the porch and shot and killed Marvin, Essie and Milton. He said Marvin was coming at him with the bat when he shot him. He shot Essie because she picked up the bat and swung it at him. He shot Milton while he was running. He testified he was not trying to hit Marvin, Essie or Milton when he shot at them. He stated he was just trying to protect himself.

Officer Mike Brady arrived on the scene. He found Marvin, Essie and Milton dead. Marvin's body was *in the street* in front of defendant's house. Milton's body was next to a house *across the street* from defendant's house. Essie's body was found *in the street* in front of the home next door. Officer Brady testified defendant admitted to shooting the victims. In subsequent statements made to the police, defendant said he shot Essie and Milton as they were trying to run. He shot them all because he was tired of dealing with them in the ongoing feud over who was the father of Mary's third child. He said they were unarmed.

A jury found defendant guilty of murder in the first degree of Essie and Milton, murder in the second degree of Marvin, and three counts of armed criminal action. The court sentenced defendant as a prior offender to serve two terms of life without the possibility of parole and four concurrent terms of life imprisonment. After an evidentiary hearing, the motion court denied defendant's Rule 29.15 motion. Defendant appeals.

■ Defendant raises five points on appeal. First, he argues the trial court erred in sustaining the state's objection to the testimony of psychologist Dr. Daniel Cuneo. Dr. Cuneo would have testified defendant suffered from narcissistic personality disorder and post-traumatic stress disorder. He concluded that these disorders affected defendant's ability to perceive and recount events following the shootings. Defendant argues this expert testimony on his capacity to perceive and recount is admissible even if it does not strictly fall under § 552.015.2(8) RSMo 1986. Defendant intended to rebut or "soften" the effect of his statement to Officer Brady.

Questions regarding the relevancy and admission of proffered expert testimony in a criminal proceeding are left to the discretion of the trial court and will not be overturned absent an abuse of discretion. *State v. Hensley*, 655 S.W.2d 810, 811 (Mo.App.1983). Defendant relies on *State v. Taylor*, 929 S.W.2d 925 (Mo.App. S.D.1996), to support his argument that Dr. Cuneo's testimony, regarding his mental diseases, was relevant as to his actions after the shootings and his credibility at trial. In *Taylor*, the court held evidence of a defendant's voluntary intoxication admissible to explain his conduct after the crime and to help the jury evaluate his credibility at trial. *Taylor*, 929 S.W.2d at 928. It relied on earlier decisions which held that evidence of intoxication is not admissible to show lack

of the necessary mental state but can be relevant to other issues. *See State v. Erwin,* 848 S.W.2d 476, 482 (Mo. banc 1993); *State v. Gary,* 913 S.W.2d 822, 827 (Mo.App. E.D. 1995).

There is no similar precedent in the present case to support a holding Dr. Cuneo's testimony was admissible for the reasons defendant argues. Evidence of a defendant's mental disease or defect is admissible in a criminal proceeding under eight specific circumstances. Section 552.015.2. Therefore, except as provided in § 552.015.2, expert testimony of defendant's state of mind affecting criminal responsibility is not authorized and may be excluded. *State v. Copeland,* 928 S.W.2d 828, 837 (Mo. banc 1996). In the present case, the only provision under which Dr. Cuneo's testimony could be admitted is § 552.015.2(8). That section provides that evidence of a defendant's mental disease or defect shall be admissible only "[t]o prove that the defendant did or did not have a state of mind which is an element of the offense." Defendant did not deny he was mentally able to deliberately commit the charged crimes. His argument was he was entitled to rebut his incriminating statement to the police by expert medical evidence of his inability to truthfully and accurately describe the shootings.

If the evidence was not being offered as expert testimony diagnosing defendant to have a mental disease or defect excluding responsibility for committing one or more elements of the crime, including absence of the appropriate mental state, it is inadmissible under § 552.015. *Copeland,* 928 S.W.2d at 837. Defendant wanted Dr. Cuneo's testimony for proof of (1) his state of mind at the time he made statements to the police after the shooting and (2) his ability to recount the prior events at trial. The state objected to the admission of the evidence for these purposes. The trial court sustained the objection. However, the court would have allowed Dr. Cuneo to testify defendant lacked deliberation at the time of the shooting, if that was his opinion. When asked, Dr. Cuneo was unable to testify to defendant's state of mind at the time of the shootings. We find the trial court did not err in sustaining the state's objection to Dr. Cuneo's testimony concerning defendant's narcissistic personality disorder and his post-traumatic stress disorder. Point I denied.

In Point II, defendant argues the trial court erred in refusing to instruct the jury on the special negative defense of self-defense as to his shooting of Milton Hutton. In determining whether a self-defense instruction must be submitted, we view the evidence in the light most favorable to defendant. *State v. Bowman,* 869 S.W.2d 901, 903 (Mo.App. W.D.1994). In order to claim self-defense, the defendant: (1) must not have provoked the assault; (2) must have reasonable grounds for believing he faced immediate danger of serious bodily injury; (3) must not use more force than what appears reasonably necessary; and (4) must do everything in his power consistent with his own safety to avoid the danger and retreat if possible. *State v. Williams,* 815 S.W.2d 43, 48 (Mo.App.1991). Self-defense is only a defense when the danger is imminent, not when the victim is in retreat. *State v. Arellano,* 736 S.W.2d 432, 435 (Mo.App.1987).

There was no evidence to support a self-defense jury instruction as to Milton. Mary Hossenlopp testified Milton was running away from defendant's house when she heard a shot and saw him fall down. The location of Milton's body indicates that he was across the street from defendant's home when he was shot. Further, defendant in his statements to police after the shooting and at trial admitted he shot Milton as he was "running." The self-defense instruction is not available when the victim is no longer threatening the defendant, but rather retreating from the confrontation. Point II denied.

In Point III, defendant argues the trial court erred in refusing to give the jury his proposed defense of premises instructions D, E and F. One instruction was directed at each victim. There is no evidence to support these instructions. When the shootings occurred, the victims were not entering or attempting to enter defendant's property, for any purpose. Failure of a trial court to give an incorrect instruction is not error. *State v. Parkhurst,* 845 S.W.2d 31, 37 (Mo. banc 1992). Accordingly, the trial court did not

err in rejecting defendant's proposed instructions. Point III denied.

In Point IV, defendant argues the trial court erred in submitting an instruction on murder in the second degree modeled after MAI–CR 3d 313.04. He claims that instruction violated his constitutional due process and fair trial rights because it failed to include language to require a finding defendant did not shoot Marvin Marshall under "influence of sudden passion arising from adequate cause" as required under the notes on use. At trial, he made no objection to what became Instruction 21. In his motion for new trial, he alleged, generally, the "trial court committed prejudicial error in giving Instruction 1 through 32 in that the instructions encompassed erroneous theories of law and evidence … and prevented Defendant's right to a fair trial under the circumstances of the case."

Rule 28.03 allows a party, during trial, to object specifically or generally on the record to instructions given by the other party. But specific objections to instructions are required in motions for a new trial unless made on the record at the time of trial. Rule 28.03; *State v. Root,* 820 S.W.2d 682, 687 (Mo.App.1991). In *Root,* the defendant argued the trial court improperly accepted a jury instruction which omitted a paragraph of the pattern instruction. *Root,* 820 S.W.2d at 687. We held defendant Root did not preserve this issue for appeal because she failed to: (1) object at trial and (2) specifically object to the instruction in her motion for new trial. *Id.* at 687–88. Root was not prejudiced by the error.

Here, defendant failed to object at trial. He also failed to specifically state the reason why he objected to Instruction 21 in his motion for new trial. Accordingly, he failed to preserve anything for appellate review. As a result, any relief left must be on the basis of plain error review. *State v. Dunagan,* 772 S.W.2d 844, 858 (Mo.App.1989).

An instructional error is seldom plain error. *State v. Walton,* 703 S.W.2d 540, 542 (Mo.App.1985). Defendant must go beyond a demonstration of mere prejudice and establish such a misdirection of the jury as would

cause manifest injustice. *Id.* No misdirection of the jury occurred here. The missing language would have required a finding defendant did not shoot while under the influence of sudden passion. MAI–CR 3d 313.04, notes on use, requires submission of the sudden passion paragraph in a murder second degree instruction only if supported by evidence defendant did act under the influence of sudden passion. That theory was not supported by the evidence and is inconsistent with defendant's theories of self-defense of property and accident. Therefore, it was not error for the court to submit the murder second degree instruction without the sudden passion language.

The submission of the voluntary manslaughter instruction, even if not required by the evidence, was not prejudicial to defendant. The jury never reached the voluntary manslaughter instruction because it found defendant guilty of the greater offense of murder second degree as to Marvin Marshall without considering a theory that was not tried or argued. For this additional reason, the absence of sudden passion language in the murder in the second degree instruction does not constitute plain error. There was no prejudicial error, plain or otherwise. Point IV denied.

In his final point, defendant argues the Rule 29.15 motion court erred in determining that trial counsel was not ineffective in failing to call Terron Woodson to testify. It denied relief after an evidentiary hearing. Review of a motion court's decision is limited to a determination of whether the findings, conclusions, and judgment are clearly erroneous. *State v. Stepter,* 794 S.W.2d 649, 656 (Mo. banc 1990). To establish ineffective assistance of counsel, defendant must show: (1) that counsel's representation failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney under similar circumstances; and (2) defendant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 689–92, 104 S.Ct. 2052, 2065–67, 80 L.Ed.2d 674 (1984); *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). When defendant challenges defense counsel's decision not to call a witness, he must refute the presumption that defense

counsel's acts or omissions were sound trial strategy. *State v. Fraction,* 782 S.W.2d 764, 770 (Mo.App.1989).

■ At the evidentiary hearing, Terron Woodson testified that if called at trial, he would have said: (1) defendant received many threats from the victims; (2) the victims were all armed with bats when they arrived at defendant's home on October 7, 1992; and (3) that he plead guilty to tampering with evidence because he had grabbed the gun from defendant after he shot the victims and threw it in some bushes.

Defense counsel testified at the hearing that his decision not to call Woodson was based on his belief, after speaking to him, that he would "not in fact bolster the self-defense defense" and that his "version of the facts of the day of the incident did not comport with the other information which we had received." The motion court found this was an exercise of reasonable trial strategy in denying defendant's Rule 29.15 motion. It also found defendant failed to show how he was prejudiced by the decision. We agree and find no error. Point V denied.

We affirm.

RHODES RUSSELL, P.J., and SIMON, J., concur.