**STATE of Missouri, Respondent,**

v.

**James W. BOYD, Appellant.**

**No. WD 61692.**

Missouri Court of Appeals, Western District.

June 1, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 2004.

Application for Transfer Denied Sept. 28, 2004.

Rosemary E. Percival, Sean D. O'Brien, Kansas City, MO, for appellant.

Andrea K. Spillars, Jefferson City, MO, for respondent.

Before: JOSEPH M. ELLIS, C.J., PATRICIA BRECKENRIDGE, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

A Clay County jury convicted Mr. James W. Boyd of first-degree murder and armed criminal action in connection with the stabbing death of Mr. Jimmy Weber. The circuit court sentenced Mr. Boyd to life imprisonment without the possibility of parole. Mr. Boyd appeals and raises five points of error. All of the points relate in some manner to the admission or exclusion of evidence and argument. We conclude that the circuit court's exclusion of evidence that Mr. Boyd suffers from a developmental disorder known as Asperger's syndrome affected the outcome of the trial. As a result, we reverse the judgment of the circuit court and remand the case for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We view the facts presented at trial in the light most favorable to the verdict. *State v. Barriner*, 111 S.W.3d 396, 397 (Mo. banc 2003).

## A. The Murder of Jimmy Weber

On the night of September 25, 1999, sixteen-year-old Jimmy Weber was stabbed to death in an undeveloped forty-acre tract of woods near the North Brighton townhouses in Clay County. Thereafter, Mr. Aaron Clary went to his attorney's office and discussed the matter. According to Mr. Clary, his acquaintance, Mr. Boyd, had recently admitted to killing Jimmy Weber, and had asked Mr. Clary to help bury the body. When Mr. Clary said that he did not believe Mr. Boyd, Mr. Boyd took Mr. Clary to see the body in the woods.

Mr. Clary's attorney called the Clay County prosecutor. After confirming that his client would receive favorable consideration for coming forward with this information, Mr. Clary's attorney arranged for the prosecutor and the county sheriff to meet Mr. Clary at the attorney's office. From there, Mr. Clary led them to the wooded area near the North Brighton townhouses, where they found Jimmy Weber's dead body pocked with twenty-eight stab wounds. The law enforcement authorities also found a shovel and a knife near the body.

Mr. Weber had gone into the woods with four other teens on the night of September 25. This group included Mr. Boyd, Mr. Brett Johnson, Mr. Adam Lile, and Ms. Lindsey Harper. Mr. Brett Johnson, Mr. Adam Lile, and Ms. Lindsey Harper all subsequently testified against Mr. Boyd and identified him as the person who stabbed Mr. Weber in the woods. Mr. Brett Johnson's brother, Brandon, also testified that Mr. Boyd admitted to killing Jimmy Weber and showed him Mr. Weber's body in the woods.

According to the evidence presented at trial, Mr. Boyd and Mr. Brett Johnson were upset with Mr. Weber for discarding a shotgun that they were going to use to rob a grocery store. They had hatched the plan to lure Mr. Weber into the woods and kill him. After walking along a trail for several minutes, the group reached an open space in the woods where they split up. Mr. Brett Johnson and Ms. Lindsey Harper continued down a hill, through heavy brush and into a clearing. Mr. Boyd, Mr. Weber, and Mr. Lile remained behind. There, Mr. Boyd pulled out a knife and stabbed Weber repeatedly as Mr. Lile stood around. The group then rendezvoused, walked past Jimmy Weber—who was gasping—and left the area running.

## B. Mr. Boyd's Defense at Trial

At trial, Mr. Boyd maintained his innocence. He asserted that the State had not presented any physical evidence linking him to Jimmy Weber's murder. He exposed numerous inconsistencies in the testimony of the State's witnesses. He also called the victim's own mother as an alibi witness.

As part of his defense, Mr. Boyd wanted to present evidence that he suffers from a disorder known as Asperger's Syndrome. According to the defense experts who would have testified about this condition, Asperger's Syndrome is a pervasive developmental disorder included in the fourth edition of the Diagnostic and Statistical Manual (DSM IV).[1] It is not a mental illness, but rather a developmental disability and a handicapping condition. It is related to autism and affects all areas of functioning, including social cognition, social ability, and visual-spatial tasks. It begins early in life and impairs the right

---

1. The DSM–IV is a reference text used in the United States to define and diagnose mental disorders.

hemisphere of the brain. People with this disorder have problems with depth perception, spatial analysis, abstract reasoning and psychomotor coordination. They typically have high verbal ability but very impaired ability in spatial reasoning and non-verbal skills. They also have an obsession with odd subject matter or specialized subjects. The defense experts would have testified that Mr. Boyd suffers from this disorder.

Mr. Boyd argued that this evidence was relevant because it would have (1) shown that he was too uncoordinated to single-handedly overpower and stab a victim twice his size; (2) shown that he could not have navigated the woods and led others to the victim's body there; (3) provided an innocent explanation for the State's focus on his unusual interests, including violent books; and (4) shown that he has an unusual gullibility or susceptibility to being framed.

Before trial, however, the State filed a motion in limine to exclude this evidence, arguing—among other things—that it was inadmissible under chapter 552 because it did not fall within any of the recognized purposes for admitting evidence of mental disease or defect. The circuit court ultimately granted the State's motion. During trial, Mr. Boyd argued that he could not present his character defense without this expert testimony and asked the circuit court to reconsider its earlier ruling on the motion in limine. In an offer of proof, he presented the proposed testimony of his three experts. The circuit court again ruled that the evidence was inadmissible and said:

> The defendant desires to introduce evidence that he suffers from a mental disease or defect, especially Asperger's Syndrome. The defendant makes no claim that he suffers from a mental disease or defect which would exclude responsibility; he makes no claim that he suffers from diminished capacity; and he makes no claim that he is not competent to proceed. These assertions have been made formally, on the record by defense counsel both as a factual statement relating to defendant's condition, and further, that as a matter of trial strategy, any such defenses are not being considered. It is the defense theory that the evidence of the defendant's mental disease should be admitted to show that he is the victim of a conspiracy by others to "set him up" to take the blame for a murder. Defendant has pled not guilty to the charge of murder in the first degree and armed criminal action. The defendant has not "confessed" to law enforcement officers. . . .

> It is the contention of the defense, that because the defendant suffers from Aspergger's Syndrome, he has in the past appeared to be, "odd," or even "scary" to other members of the public. If the defendant does appear to be "odd" or "scary" to other persons, that perception of other persons may be elicited by fact witnesses. The reason that defendant may appear to be "odd" or "scary," whether it be caused by a mental disease, a personality quirk, behavior, or any other reason, is not relevant. The defense team had stated they would call approximately 20 character witnesses. The defense did call a limited number of character witnesses. If the defendant is deemed to be odd, or scary, then presumably this evidence could have been produced by fact witnesses, rather than an expert witness who would attempt to explain "why" the defendant appears odd to someone else. Whether or not a person is "odd" or "scary" is not a material issue in a prosecution for murder in the first degree. Defense counsel decided as a matter of trial strategy to abandon the character witnesses and defense.

With respect to the theory that a conspiracy exists in order to "set the defendant up to take responsibility," this court could see the possibility that such evidence might be admissible if the defendant had given a "false confession." In other words, if because of a mental disease or condition, the defendant was induced to render a "false confession" in order to impress his friends or colleagues, to ingratiate himself with friends or colleagues, or to "please" law enforcement officers, this would be the proper subject matter for a motion to suppress a confession. Again, there is no confession or incriminating statement by the defendant in this case to any member of law enforcement.

The court further said:

Defense counsel's narrative offer of proof, and portions of the testimonial offer, have the flavor of establishing that the defendant would be physically incapable of committing the offense because of his mental disease or defect, such as becoming lost or being unable to drive a car. Defendant has consistently stated that his mental disease or defect is not one, which would exclude responsibility.[2]

## II. Legal Analysis

### Exclusion of Evidence—Asperger's Syndrome

In his first point, Mr. Boyd argues that the circuit court improperly relied upon chapter 552 to exclude expert testimony regarding the Asperger's syndrome. We agree.

■ "The denial of the opportunity to present relevant and competent evidence negating an essential element of the state's

case may, in some cases, constitute a denial of due process." *State v. Copeland*, 928 S.W.2d 828, 837 (Mo. banc 1996). The due process clause does not require the admission of irrelevant evidence or even the admission of all relevant evidence, however. *Id.*

■ "Because expert testimony is always fraught with questions of relevancy and competency, the decision to admit expert conclusions is a matter of trial court discretion that will not be overturned on appeal absent an abuse of discretion." *Id.* An abuse of such discretion occurs when the circuit court's ruling is "clearly against the logic of the circumstances, or when it is arbitrary and unreasonable." *State v. Hayes*, 88 S.W.3d 47, 61 (Mo.App. W.D. 2002).

■ Even then, the circuit court's error does not warrant reversal "unless there is a reasonable probability that the . . . error affected the outcome of the trial." *State v. Rutter*, 93 S.W.3d 714, 728 (Mo. banc 2002) (internal quotation marks and citation omitted).

### A. The Evidence is Not Related to a Chapter 552 Proceeding

■ The circuit court excluded Mr. Boyd's expert testimony after it concluded that the evidence was not admissible under chapter 552. Chapter 552 concerns those cases where the defendant claims that he lacks responsibility for his act because of some mental disease or defect. *See* § 562.086.2 ("The procedures for the defense of lack of responsibility because of mental disease or defect are governed by the provisions of chapter 552, RSMo."). In those cases, chapter 552 limits the cir-

---

2. The two propositions are not inconsistent. Mr. Boyd is not saying that he committed the crime but that he nonetheless should not be held responsible for that crime because of his mental disease or defect. He is saying that he did not commit the crime and that the physical manifestations of Asperger's syndrome demonstrate why he could not have done so.

cumstances in which evidence of a mental disease or defect[3] may be admitted. *Copeland,* 928 S.W.2d at 837. Such evidence is only admissible under chapter 552 if it falls within one or more of the exceptions identified in section 552.015.2. § 552.015.2; Copeland, 928 S.W.2d at 837. As provided in that section, such evidence is admissible:

(1) To determine whether the defendant lacks capacity to understand the proceedings against him or to assist in his own defense as provided in section 552.020;

(2) To determine whether the defendant is criminally responsible as provided in section 552.030;

(3) To determine whether a person committed to the director of the department of mental health pursuant to this chapter shall be released as provided in section 552.040;

(4) To determine if a person in the custody of any correctional institution needs care in a mental hospital as provided in section 552.050;

(5) To determine whether a person condemned to death shall be executed as provided in sections 552.060 and 552.070;

(6) To determine whether or not the defendant, if found guilty, should be sentenced to death as provided in chapter 558, RSMo;

(7) To determine the appropriate disposition of a defendant, if guilty, as provided in sections 557.011 and 557.031, RSMo;

(8) To prove that the defendant did or did not have the state of mind which is an element of the offense;

(9) To determine if the defendant, if found not guilty by reason of mental disease or defect, should be immediately conditionally released by the court under the provisions of section 552.040 to the community or committed to a mental health or mental retardation facility....

§ 552.015.2.

The Missouri Supreme Court addressed chapter 552 in *Copeland.* In that case, a woman claimed that she was suffering from battered spouse syndrome when she assisted her husband in the murders of several itinerant farm hands. 928 S.W.2d at 834–37. She wanted to present expert testimony from a psychologist who would have told the jury that the defendant was suffering from battered spouse syndrome at the time of the murders. *Id.* at 837. The defendant informed the circuit court that she did not intend to rely upon the defense of mental disease or defect or upon the defense of diminished capacity, however. *Id.* Instead, she claimed that the expert testimony was relevant to issues such as her "knowledge of the situation surrounding her, and [her] intent, or lack thereof, to commit criminal conduct."

---

**3.** "The terms 'mental disease or defect' include congenital and traumatic mental conditions as well as disease. They do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, whether or not such abnormality may be included under mental illness, mental disease or defect in some classifications of mental abnormality or disorder. The terms 'mental disease or defect' do not include alcoholism without psychosis or drug abuse without psychosis or an abnormality manifested only by criminal sexual psychopathy as defined in section 202.700, RSMo...." § 552.010. Neither party addresses whether Asperger's Syndrome falls within this statutory definition. Mr. Boyd denies that Asperger's Syndrome is a mental illness; he characterizes it as a "developmental disability." In any event, he argues that it does not matter in this case whether Asperger's syndrome is a mental disease or defect as defined in section 552.010, because this case does not fall within chapter 552.

*Id.* The circuit court rejected an offer of proof regarding the expert's testimony. *Id.*

To determine whether the evidence was relevant and admissible, the Missouri Supreme Court considered the purpose for which it was offered. First, the court considered whether the evidence was admissible if it was not being offered as expert testimony diagnosing the defendant with a mental disease or defect excluding responsibility for committing one or more elements of the crime, including the absence of the appropriate culpable mental state. *Id.* The court concluded that the evidence was inadmissible under chapter 552 for such a purpose and said, "Except as provided by chapter 552, expert testimony of a defendant's state of mind affecting criminal responsibility is not authorized and may be excluded." *Id.*

The court considered whether the evidence was admissible if it was being offered as expert testimony diagnosing the defendant with a mental disease or defect that excluded the defendant's criminal responsibility. *Id.* For reasons specific to the case, the court also concluded that the evidence was inadmissible for this purpose since the defendant had not complied with the notice requirement contained in section 552.030 [4] and had instead informed the circuit court that she did not intend to rely upon the defense of mental disease or defect or the defense of diminished responsibility due to mental disease or defect. *Id.* at 837–38.

The court further concluded that the evidence contained in the offer of proof would not support those defenses in any event because the expert did not testify that battered spouse syndrome was a "mental condition, disease or defect that would have prevented defendant from premeditating or possessing any other culpable mental state" and because she testified that the defendant "could tell right from wrong, that she presented no psychosis, that she possessed no mental disease or defect as defined by Chapter 552, that she was capable of conforming her conduct to the requirements of the law, and that defendant was competent to stand trial." *Id.* at 838.

In sum, the court concluded that the exclusion of the evidence did not violate the defendant's right to due process because the defendant had failed to give notice of her intent to rely upon the only issue to which the expert testimony would be relevant—whether she was responsible for her conduct or had a diminished responsibility for her conduct as a result of a mental disease or defect—and because the evidence failed to support such a claim. *Id.*

This court's eastern district subsequently addressed chapter 552 in *State v. Davidson.* 941 S.W.2d 732 (Mo.App. E.D.1997). In that case, the defendant admitted to the police that he had shot three people. *Id.* at 734. At trial, he sought to introduce expert psychological testimony to show that he suffered from narcissistic personality disorder and post-traumatic stress disorder. *Id.* The defense expert would have testified that these disorders "affected defendant's ability to perceive and recount events following the shootings." *Id.* The defendant argued that this evidence re-

---

4. Under this provision, "[e]vidence of mental disease or defect excluding responsibility shall not be admissible at trial of the accused unless the accused, at the time of entering such accuser's plea to the charge, pleads not guilty by reason of mental disease or defect exclud-

ing responsibility, or unless within ten days after a plea of not guilty, or at such later date as the court may for good cause permit, the accused files a written notice of such accused's purpose to rely on such defense." § 552.030.2.

garding his capacity to perceive and to recount was admissible even if it did not strictly fall under section 552.015.2(8) because it was relevant to his actions after the shootings and to his credibility at trial. *Id.*

Relying upon *Copeland*, the Eastern District rejected this argument and said:

Evidence of a defendant's mental disease or defect is admissible in a criminal proceeding under eight specific circumstances. Section 552.015.2. Therefore, except as provided in § 552.015.2, expert testimony of a defendant's state of mind affecting criminal responsibility is not authorized and may be excluded. *State v. Copeland*, 928 S.W.2d 828, 837 (Mo. banc 1996). In the present case, the only provision under which Dr. Cuneo's testimony could be admitted is § 552.015.2(8). That section provides that evidence of a defendant's mental disease or defect shall be admissible only '[t]o prove that the defendant did or did not have a state of mind which is an element of the offense.' Defendant did not deny he was mentally able to deliberately commit the charged crimes. His argument was he was entitled to rebut his incriminating statement to the police by expert medical evidence of his inability to truthfully and accurately describe the shootings.

If the evidence was not being offered as expert testimony diagnosing defendant to have a mental disease or defect excluding responsibility for committing one or more elements of the crime, including absence of the appropriate mental state, it is inadmissible under § 552.015. *Copeland*, 928 S.W.2d at 837. Defendant wanted Dr. Cuneo's testimony for proof of (1) his state of mind at the time he made statements to the police after the shooting and (2) his ability to recount the prior events at trial.

The state objected to the admission of the evidence for these purposes. The trial court sustained the objection. However, the court would have allowed Dr. Cuneo to testify defendant lacked deliberation at the time of the shooting, if that was his opinion. When asked, Dr. Cuneo was unable to testify to defendant's state of mind at the time of the shootings. We find that the trial court did not err in sustaining the state's objection to Dr. Cuneo's testimony concerning defendant's narcissistic personality disorder and his post-traumatic stress disorder.

*Id.* at 735.

The State reads these cases to mean that section 552.015 governs the admissibility of "mental disease or defect" evidence in all instances, as opposed to those instances related to chapter 552 proceedings. We disagree. *Copeland* and *Davidson* address the admissibility of "mental disease or defect" evidence under chapter 552. *See Copeland*, 928 S.W.2d at 837 (such evidence is inadmissible *"under Chapter 552"* unless it is evidence "diagnosing defendant to have a mental disease or defect *excluding responsibility* for committing one or more elements of the crime ....") (emphasis added); *Davidson*, 941 S.W.2d at 735 ("If the evidence was not being offered as expert testimony diagnosing defendant to have a mental disease or defect *excluding responsibility* for committing one or more elements of the crime, including absence of the appropriate mental state, it is inadmissible *under § 552.015."*) (emphasis added).

This is consistent with the General Assembly's legislative scheme. When the General Assembly enacted section 552.015, it embedded that section within the already-existing chapter 552. Broadly speaking, chapter 552 is a "Mental Responsibility Law." *State v. Strubberg*, 616

S.W.2d 809, 813 (Mo. banc 1981). *See generally, Missouri's Mental Responsibility Law, A Symposium,* 19 J.MO.BAR 645 (December 1963) (discussing enactment of chapter 552 and referring to it as a "mental responsibility law"). Chapter 552 in turn draws from the Model Penal Code (MPC) as a source for some of its provisions. *See State v. Anderson,* 515 S.W.2d 534, 538 and n. 2 (Mo. banc 1974). Article 4 of the MPC bears the title "Responsibility" and its provisions likewise address a person's mental responsibility for criminal conduct. *See generally,* MODEL PENAL CODE art. 4, 10A ULA 173 (2001).

It is also consistent with the actual admission of "mental disease or defect" evidence outside of chapter 552 proceedings. As Mr. Boyd points out, our criminal jury instructions permit jurors to consider evidence that a defendant did not understand what he was saying or doing when he gave a confession, including whether that lack of understanding resulted from a "mental disease or defect." MAI—CR 3d 310.06, Notes on Use 3. Were the law as the State claims it is, such evidence would not be admissible because it does not fall within any of the categories listed in section 552.015.2. That it is admissible suggests that section 552.015 does not apply to evidence unrelated to a chapter 552 proceeding.

The evidence in this case likewise does not relate to any Chapter 552 proceeding. Mr. Boyd does not argue that his proposed evidence is relevant and admissible to establish a lack of responsibility for murdering Jimmy Weber under chapter 552. He denies altogether that he murdered Mr. Weber. He argues that his evidence is relevant and admissible to establish that he did not commit the murder. Chapter 552 does not cover this situation. Therefore, the circuit court erred in excluding the evidence on that basis.

## B. The Admission of this Evidence Does Not Preclude the State from Conducting a Mental Examination of Mr. Boyd

The State contends that the admission of "mental disease or defect" evidence should be limited exclusively to those categories listed in Chapter 552 because "the state would not be able to compel a mental examination of appellant except under Chapter 552, for the purposes of determining whether he is competent to stand trial (§ 552.020) or to determine whether the appellant is not guilty by reason of mental disease or defect (§ 552.030)." This argument misses the mark because Mr. Boyd has never claimed either that he is incompetent or that he is not guilty by reason of mental disease or defect under chapter 552.

Of course, the State might have other legitimate reasons for seeking an independent medical examination in this case; for example, the State might seek to determine whether Mr. Boyd actually suffers from Asperger's Syndrome. Even so, the State has the ability to obtain an examination under our rules of criminal procedure. Apart from the provisions of chapter 552, Rule 25.06(B)(9) permits the circuit court to compel a mental examination for good cause shown. *See, e.g., State ex rel. Westfall v. Crandall,* 610 S.W.2d 45, 46 n. 1, 47 (Mo.App. E.D.1980). And counsel for Mr. Boyd conceded that the State is entitled to such an examination in this case.

Although we conclude that it was error to exclude Mr. Boyd's proposed testimony, that conclusion does not end our inquiry because the State further argues that Mr. Boyd's offers of proof regarding Asperger's syndrome were inadequate and included inadmissible hearsay. We conclude that Mr. Boyd's offers of proof were adequate.

### C. Mr. Boyd's Offers of Proof Were Adequate

 To suffice, an offer of proof must show three things:

1) what the evidence will be; 2) the purpose and object of the evidence; and 3) each fact essential to establishing the admissibility of the evidence. Where proffered evidence is excluded, relevancy and materiality must be shown by specific facts sufficient to establish admissibility so as to preserve the matter for review. The purposes of an offer of proof are: 1) to preserve the evidence so that the appellate court understands the scope and effect of the questions and proposed answers in considering whether the trial judge's ruling was proper; and 2) to allow the trial judge to further consider the claim of admissibility after having ruled the evidence inadmissible.

*State v. Tisius,* 92 S.W.3d 751, 767–68 (Mo. banc 2002)(footnotes omitted).

In his offers of proof, Mr. Boyd presented the in-court testimony of Dr. David Bennett and Dr. Timothy Derning, both psychologists. Mr. Boyd presented the deposition testimony of Dr. Dennis Cowan, also a psychologist. The State contends that the offers of proof from Dr. Cowan and Dr. Bennett did not demonstrate how Asperger's syndrome is relevant to Mr. Boyd's defense. The State further contends that Dr. Derning's offer of proof fails entirely because it includes some inadmissible hearsay.

It is true that Dr. Bennett's offer of proof did not explain how Asperger's syndrome is relevant to many of the propositions that Mr. Boyd seeks to establish in his defense. As the State correctly points out, Dr. Bennett did not testify that a person with Asperger's syndrome would find it difficult or impossible to overpower and stab another person. He did not testify that a person with Asperger's syndrome would find it difficult or impossible to lead others through a heavily wooded area. He did not testify that a person with Asperger's syndrome would be unusually susceptible to being framed for murder. Additionally, he did not testify about any relationship between unusual reading and viewing interests in Asperger's sufferers, on the one hand, and violent behavior, on the other.

It is also true that Dr. Cowan's offer of proof did not explain how Asperger's syndrome is relevant to any of these propositions. As the State again correctly points out, Dr. Cowan testified that he did not know how Asperger's syndrome pertained to Mr. Boyd's actions on the night of the murder. Dr. Cowan testified that he was only asked to determine Mr. Boyd's current neuropsychological abilities and to see if Mr. Boyd meets the criteria for Asperger's syndrome.

What all of this overlooks, however, is that the testimony of these two experts was relevant to understanding Asperger's syndrome itself and to whether Mr. Boyd has it. We agree with Mr. Boyd that Dr. Bennett and Dr. Cowan's testimony "provided the necessary context for Dr. Derning's testimony," which we consider next.

Dr. Derning's testimony relates to many of the propositions that Mr. Boyd raises in his defense. Dr. Derning testified that it would be "inconceivable" and "impossible" for Mr. Boyd to lead others to a body in the forty-acre tract of woods, given his Asperger's Syndrome. Dr. Derning further testified that one of the unique features of Asperger's Syndrome is an interest in odd subjects such as those that interest Mr. Boyd but that such an interest does not increase the likelihood that he would actually engage in behavior related to the subjects that interest him. As Dr. Derning explained:

What you have with somebody like Jim is they are just parallel lines. He has an intellectual interest in this, but he doesn't have the same emotional discharge because of his disability that we would expect and commonly think about when we say, well here's somebody who is interested in these topics.

And Dr. Derning testified that a person with Asperger's syndrome such as Mr. Boyd is vulnerable to being manipulated and exploited and that Mr. Boyd "is just a natural to be framed" for murder.

Dr. Derning did not testify that a person with Asperger's Syndrome such as Mr. Boyd would be physically incapable of overpowering and stabbing the victim but he testified generally that Mr. Boyd was "clumsy and awkward and didn't have developed motor abilities."

The State does not dispute the relevance of this testimony. Instead, the State contends that Dr. Derning's offer of proof contains inadmissible hearsay culled from various witnesses interviewed by Dr. Derning to the effect that Mr. Boyd is not a violent person. The State cites Missouri law for the proposition that the circuit court is justified in rejecting an entire offer of proof when part of it contains inadmissible evidence. *State v. Broussard*, 57 S.W.3d 902, 911 (Mo.App. S.D. 2001). That is true, but also incomplete. The circuit court is justified in rejecting the whole offer *if the State properly objects to it.* *Lott v. Kjar*, 378 S.W.2d 480, 484 (Mo.1964) ("'If several facts are included in the offer, some admissible and others inadmissible, then the whole (if properly objected to) is inadmissible; in other words, it is for the proponent to sever the good and the bad parts.'") (quoting 1 Wigmore on Evidence, 3d ed. § 17, page 320); *State v. Edwards*, 918 S.W.2d 841, 845 (Mo.App. W.D.1996) ("If an offer of proof is made that contains many facts, some of which ultimately [sic] deemed admissible and some inadmissible, then the whole offer, if properly objected to, is deemed inadmissible."). Although the State originally filed a motion in limine to exclude evidence regarding Asperger's syndrome, the record does not reveal that the State ever objected to the offer of proof.

Moreover, the State concedes the principle that "[a]n expert witness is entitled to rely on hearsay evidence to support his opinion so long as that evidence is of the type reasonably relied upon by other experts in that field; such evidence need not be independently admissible." *State v. Hendrix*, 883 S.W.2d 935, 940 (Mo.App. W.D.1994). The State argues that Dr. Derning did not rely upon these hearsay statements in reaching his opinions in this case, and that this principle therefore does not apply here. But the State cites nothing in the record that supports this assertion. We have reviewed the transcript of Dr. Derning's testimony. It appears that Dr. Derning relied upon his interviews at least to the extent that it helped him eliminate other disorders such as antisocial personality disorder.

We conclude that the offers of proof were adequate.

**D. There is a Reasonable Probability that the Exclusion of the Evidence Affected the Outcome of Mr. Boyd's Trial and was Prejudicial**

▮▮▮ Because we conclude that it was error to exclude Mr. Boyd's evidence, the next question is whether Mr. Boyd suffered prejudice as a result of its exclusion. "A trial court's exclusion of admissible evidence creates a presumption of prejudice, rebuttable by facts and circumstances of the particular case." *Barriner*, 111 S.W.3d at 401. "If the proof of defendant's guilt was overwhelming, the state

will have rebutted the presumption of prejudice." *Id.*

The case against Mr. Boyd was hardly "overwhelming." He denied murdering Jimmy Weber. The State presented no physical evidence that he did murder Jimmy Weber. The victim's own mother furnished Mr. Boyd with an alibi, testifying that he was at her home when the State's witnesses claimed that he was committing the crime. Almost all of the evidence against Mr. Boyd came from highly-suspect witnesses who had struck plea bargains with the State to avoid much more serious charges in connection with Mr. Weber's death.

Many of those witnesses testified inconsistently about the events at the heart of the State's case. As the defense cross-examination demonstrated, they repeatedly omitted key facts from statements given to police only to recall them later. The circuit court acknowledged these inconsistencies when it said:

> Also obvious to any person who attended the trial, certain witnesses had inconsistencies in their statements, both to police and during trial and sometimes within the same question it seemed. There might be inconsistencies in a[n] answer within the same period of examination during trial.

There is a reasonable probability that the exclusion of the evidence affected the outcome of Mr. Boyd's trial. Accordingly, we reverse the judgment of the circuit court and remand the case for a new trial. Because the resolution of Mr. Boyd's first point alone requires reversal and a new trial, we do not address Mr. Boyd's four remaining points.

### III. CONCLUSION

We conclude that chapter 552 does not preclude the admission of evidence pertaining to Asperger's syndrome in this case. We further conclude that Mr. Boyd's offers of proof on this issue were adequate. Because there is a reasonable probability that the exclusion of the evidence affected the outcome of Mr. Boyd's trial and was prejudicial, we reverse the judgment of the circuit court and remand the case for a new trial.

JOSEPH M. ELLIS, C.J., and PATRICIA BRECKENRIDGE, JJ. concur.