STATE of Missouri, Respondent,

v.

Dennis G. MILLER, Appellant.

No. WD 65893.

Missouri Court of Appeals,
Western District.

April 24, 2007.

Ruth Sanders, Kansas City, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before ROBERT G. ULRICH, P.J., THOMAS H. NEWTON, J., and GENE R. MARTIN, Sp.J.

ROBERT G. ULRICH, Presiding Judge.

Dennis Miller appeals his conviction following jury trial for murder in the first degree, section 565.020, and assault in the first degree, section 565.050, and his sentence of life imprisonment without the possibility of parole for murder in the first degree and fifteen years imprisonment for assault in the first degree. In his sole point on appeal, Mr. Miller claims the trial

court erred in excluding the testimony of a doctor and counselor that he was suicidal in the weeks prior to the incidents for which he was convicted. The point is denied, and the judgment is affirmed.

## Facts

The facts presented at trial are viewed in the light most favorable to the verdict. *State v. Barriner,* 111 S.W.3d 396, 397 (Mo. banc 2003).

Dennis and Jewell Miller were married in 1984. Mr. Miller moved out of the marital home in February 2003. James Pat Hughes, Ms. Miller's boyfriend, moved in with Ms. Miller in March 2004.

Mr. Miller went to the marital home, which Ms. Miller was sharing with Mr. Hughes, on August 14, 2004. Surveillance cameras placed around the house reveal that Mr. Miller hid in the bushes in front of the house from approximately 4:20 A.M. until approximately 7:20 A.M. Mr. Miller confronted Mr. Hughes in the driveway at approximately 7:20 A.M. Mr. Hughes called 911 on his cell phone. The 911 operator heard the caller say: "It will be the last thing that you'll ever do in your life." The operator heard another person respond: "No. It will be the last thing you do in your life." The 911 call was terminated, and Mr. Miller shot Mr. Hughes in the chest with a .38 caliber revolver Mr. Miller brought with him to the marital home.

At approximately 7:20 A.M., a neighbor heard loud voices, looked out her kitchen window, and saw Mr. Miller and Mr. Hughes in the driveway of the marital home. Mr. Hughes was talking on his cell phone. The neighbor testified that Mr. Miller looked at her, and she made eye

contact with him. The neighbor shut her blinds and then heard a loud noise sounding like "metal on metal."

After shooting Mr. Hughes, Mr. Miller walked into the house and went into the bedroom where Ms. Miller was waking up. Mr. Miller stared at Ms. Miller in the bed and looked into the bathroom. He reached into a closet, picked up a shotgun owned by Mr. Hughes, and then put it back down. Ms. Miller left the bedroom. Mr. Miller followed her, caught her, and pulled her by her arm and by her hair while she tried to leave the house. Mr. Miller displayed a gun during this struggle, but he did not point it at her. Mr. Miller eventually let Ms. Miller go, and she ran to a neighbor's house. Ms. Miller sustained numerous cuts and bruises during her struggle with Mr. Miller.

After Ms. Miller ran outside, Mr. Miller closed and locked the door. The police found him in the basement of the marital home, and he was arrested. The police found Mr. Hughes lying in the driveway. He had been fatally shot once in the upper chest.

Mr. Miller was charged with murder in the first degree, section 565.020, assault in the first degree, section 565.050, and two counts of armed criminal action, section 571.015, for Mr. Hughes' death and the assault on Ms. Miller. On the morning of the second day of the trial, during jury selection, Mr. Miller made an offer of proof of the testimony of Dr. John Schmitz and of JoAnn Hall. The witnesses were presented for two purposes: (1) to testify as expert witnesses that Mr. Miller was entitled to present a defense under Chapter 552 [1] and (2) to testify as fact witnesses

---

1. All statutory citations are to RSMo 2000 unless otherwise stated. "Chapter 552 concerns those cases where the defendant claims that he lacks responsibility for his act because

of some mental disease or defect." *State v. Boyd,* 143 S.W.3d 36, 40 (Mo.App. W.D.2004). Section 552.015 governs the admission of evidence of mental disease or defect and states:

as to Mr. Miller's location the month prior to the shooting, the medications he was prescribed, and his suicidal state. As relevant to the second purpose,[2] Dr. Schmitz testified Mr. Miller was a patient at Two Rivers Psychiatric Hospital intermittently from July 9, 2004, until August 6, 2004, and was an outpatient until August 19, 2004, the day of the shooting. Dr. Schmitz described Mr. Miller as suicidal. JoAnn Hall, Mr. Miller's therapist at Two Rivers Psychiatric Hospital, also described Mr. Miller as suicidal.

Mr. Miller's counsel argued that, even if this evidence were inadmissible under Chapter 552, it was admissible as evidence that would tend to negate the elements of intent and deliberation. The trial court ruled that the evidence was inadmissible because the defense had not given notice of intent to rely on evidence of mental disease or defect excluding responsibility as required by Chapter 552.

Mr. Miller admitted at trial that he shot Mr. Hughes and struggled with Ms. Miller. He argued, however, that he did not deliberate before shooting Mr. Hughes and that he did not intend to kill or injure Ms. Miller. The defense informed the jury that it would present evidence that Mr. Miller did not intend to encounter or shoot Mr. Hughes. Mr. Miller's counsel made two arguments in his defense.

First, he argued that Mr. Miller went to the marital home with the plan of committing suicide in front of Ms. Miller. In its closing argument, the defense argued that when Mr. Hughes stated: "don't let this be the last thing you do," he meant, "don't kill yourself." Second, he argued Mr. Miller shot Mr. Hughes either in self-defense or accidentally during a struggle. Mr. Miller called his mother, father, and sister as witnesses. They testified that Mr. Miller and Mr. Hughes had a contentious relationship, and Mr. Miller had been informed that Mr. Hughes was a prior member of the special forces in the military and

1. Evidence that the defendant did or did not suffer mental disease or defect shall not be admissible in a criminal prosecution except as provided in this section.
2. Evidence that the defendant did or did not suffer from a mental disease or defect shall be admissible in a criminal proceeding:
(1) To determine whether the defendant lacks capacity to understand the proceedings against him or to assist in his own defense as provided in section 552.020;
(2) To determine whether the defendant is criminally responsible as provided in section 552.030;
(3) To determine whether a person committed to the director of the department of mental health pursuant to this chapter shall be released as provided in section 552.040;
(4) To determine if a person in the custody of any correctional institution needs care in a mental hospital as provided in section 552.050;
(5) To determine whether a person condemned to death shall be executed as provided in sections 552.060 and 552.070;

(6) To determine whether or not the defendant, if found guilty, should be sentenced to death as provided in chapter 558, RSMo;
(7) To determine the appropriate disposition of a defendant, if guilty, as provided in sections 557.011 and 557.031, RSMo;
(8) To prove that the defendant did or did not have a state of mind which is an element of the offense;
(9) To determine if the defendant, if found not guilty by reason of mental disease or defect, should be immediately conditionally released by the court under the provisions of section 552.040 to the community or committed to a mental health or mental retardation facility. This question shall not be asked regarding defendants charged with any of the dangerous felonies as defined in section 556.061, RSMo, or with those crimes set forth in subsection 11 of section 552.040, or the attempts thereof.

2. Mr. Miller does not claim on appeal that he was entitled to present a defense under Chapter 552. Accordingly, any evidence pertaining to the claim is not examined.

had killed over 120 men. The purpose of this testimony was to demonstrate Mr. Miller believed Mr. Hughes posed a threat, had reason to fear Mr. Hughes, and believed that he could and would harm him when the two encountered one another in the driveway on the morning of the shooting. Thus, the defense was that Mr. Miller went to the marital home planning to commit suicide, encountered Mr. Hughes, believed Mr. Hughes posed a threat, and shot Mr. Hughes in self-defense. Further, Mr. Miller attempted to restrain Ms. Miller so as to commit suicide in her presence, and not for the purpose of harming her.

At the end of the trial, Mr. Miller elected not to testify. Without Mr. Miller's testimony, there was insufficient evidence to warrant the giving of a self-defense instruction to the jury.[3] Thus, the defense of self-defense was unavailable. The testimony of Mr. Miller's mother, father, and sister did not reference suicide or Mr. Miller's purported suicidal ideation, and Mr. Miller presented no evidence that he was suicidal.

Mr. Miller was convicted on all four counts and sentenced as recommended by the jury. He was sentenced to life imprisonment without the possibility of parole for murder in the first degree, life imprisonment for the first count of armed criminal action, fifteen years imprisonment for assault in the first degree, and fifteen years imprisonment for the second count of armed criminal action, with the fifteen year sentences to run consecutive to the life sentences. His timely appeal followed.

## Standard of Review

"A trial court enjoys considerable discretion in the admission or exclusion of evidence." *State v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005). " 'This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion.' " *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006) (citation omitted). When a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration, that discretion is abused. *Gonzales*, 153 S.W.3d at 312. " 'The denial of the opportunity to present relevant and competent evidence negating an essential element of the state's case may, in some cases, constitute a denial of due process.' " *State v. Boyd*, 143 S.W.3d 36, 40 (Mo.App. W.D.2004) (citation omitted). "The due process clause does not require the admission of irrelevant evidence or even the admission of all relevant evidence, however." *Id.*

"Additionally, on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Forrest*, 183 S.W.3d at 223–24 (quote marks and citation omitted). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.* at 224. "The erroneous exclusion of evidence in a criminal case creates a presumption of prejudice which can only be overcome by a showing that such erroneous exclusion was harmless error beyond any reasonable doubt." *State v. Gerhart*, 129 S.W.3d 893, 900 (Mo.App. W.D.2004)(quotation marks and citation omitted). "If the proof of defendant's guilt was overwhelming, the [S]tate will have

---

**3.** "There is no requirement that a defendant testify in order for a self-defense instruction to be given." *Beal v. State*, 209 S.W.3d 542, 544 (Mo.App. S.D.2006). "The instruction is required if there is substantial evidence of self-defense even when the defendant does not testify or otherwise offer any evidence at trial." *Id.*

rebutted the presumption of prejudice." *Boyd*, 143 S.W.3d at 46–47.

## Analysis

 In his sole point on appeal, Mr. Miller argues the trial court erred in excluding the testimony of Dr. Schmitz and Ms. Hall that he was suicidal in the weeks before the shooting. He claims the trial court violated his rights to due process of law, to a fair trial, and to present a defense as guaranteed by the Fifth, Sixth, and Fourteenth amendments to the United States Constitution and by article 1, sections 10 and 18(A) of the Missouri Constitution. He claims the excluded testimony was outside the purview of Chapter 552 because being suicidal is not a mental disease or defect. He also claims the excluded testimony was logically and legally relevant to prove a fact at issue in the case as it would have tended to disprove that he deliberated before the shooting. Mr.

Miller further contends that he was prejudiced by the exclusion of testimony because, had the jury been presented evidence that he was suicidal in the weeks before the shooting, there is a reasonable probability that it would have found that he went to Ms. Miller's house with the intent to commit suicide rather than with the intent to kill Mr. Hughes. He asserts the jury would have found him guilty of the lesser-included offense of murder in the second degree.[4]

 Mr. Miller argues on appeal that he was not seeking to introduce the testimony of Dr. Schmitz and Ms. Hall to show that he was not guilty by reason of a mental disease or defect[5] or that he suffered from diminished capacity.[6] He also argues the excluded evidence would have demonstrated he was suicidal in the weeks prior to the shooting. He maintains that being suicidal is not a mental disease or defect.

4. "A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." § 565.050.1. The State bears the burden of proving the specific intent to commit serious physical injury or to kill. *See State v. Whalen*, 49 S.W.3d 181, 185–87 (Mo. banc 2001). Mr. Miller also asserts that the offered testimony was relevant in that it would have shown he lacked the intent to kill Ms. Miller or cause her serious bodily injury. He further contends the exclusion prejudiced him in that there is a reasonable probability that the jury would have found that he went to the marital home with the intent to commit suicide rather than with the intent to kill Ms. Miller. He asserts the jury would have acquitted him of assault in the first degree. Rule 29.11(d) states that "[i]n jury-tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial." The three exceptions are questions pertaining to jurisdiction, whether the indictment or information states an offense, and the sufficiency of the evidence to sustain the conviction. Mr. Miller's argument that the excluded evidence that he was suicidal was relevant to the

intent required for assault in the first degree was not included in his motion for a new trial. The motion asserted only that the excluded evidence was relevant to whether he deliberated as required for first degree murder. This argument also does not fall within one of the three exceptions set forth in Rule 29.11(d). Notably, he does not contest on appeal the sufficiency of the evidence supporting any of the counts for which he was convicted. Accordingly, any argument that the excluded evidence was relevant as to intent and the charge of assault in the first degree is not preserved for appeal and is not considered.

5. The defense of not guilty by reason of mental disease or defect is set forth in section 552.030 and is often referred to as NGRI.

6. "The doctrine of diminished capacity means that proof of a mental derangement short of insanity may be allowed as evidence of a lack of deliberate design or premeditation. The doctrine contemplates full responsibility, not partial, but only for the crime actually committed." *Smith v. State*, 784 S.W.2d 855, 858 (Mo.App. E.D.1990); § 552.015.2(8).

Finally, Mr. Miller also argues that the evidence was not relevant to show that he was not guilty by reason of insanity or diminished capacity. He did not argue that he was unable to deliberate or that he was incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct. Instead, he claims it was relevant to show his suicidal plan. He maintains he went to Ms. Miller's house with the intention of killing himself and not with the intention of killing Mr. Hughes. Thus, Mr. Miller adamantly denies that the offered testimony was within the purview of Chapter 552.

For purposes of this analysis, this court will assume, without deciding, that Mr. Miller is correct that the offered testimony would have demonstrated that he was suicidal in the weeks prior to the shooting and that the testimony was not inadmissible because of Chapter 552. Even so, the trial court's exclusion of this testimony was not an abuse of discretion. "[A] trial court's ruling on the admissibility of evidence will be upheld if it is sustainable on any theory." *State v. Worrel,* 933 S.W.2d 431, 436 (Mo.App. W.D.1996)(*citing State v. Christian,* 847 S.W.2d 179, 181 (Mo.App. E.D.1993)). Evidence of Mr. Miller's suicidal state was irrelevant as to whether Mr. Miller deliberated before shooting Mr. Hughes.

"A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020.1. "Deliberation" required for conviction for murder in the first degree is defined as "cool reflection for any length of time no matter how brief." § 565.002(3). "The deliberation necessary to support a conviction of first-degree murder need only be momentary; it is only necessary that the evidence show that the defendant considered taking another's life in a deliberate state of mind." *State v. Jones,* 955 S.W.2d 5, 12 (Mo.App. W.D.1997). "A deliberate act is a free act of the will done in furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose and while not under the influence of violent passion suddenly aroused by some provocation." *Id.* "Deliberation may be inferred from the circumstances surrounding the murder." *Id.*

"Absent a confession by the actor that reveals his or her intent, a person's mental state can be known only through the person's actions." *State v. Roberts,* 948 S.W.2d 577, 589 (Mo. banc 1997). "Evidence of a person's conduct raises inferences that point toward or away from a conclusion that the person possessed a culpable mental state." *Id.* "Evidence of conduct that is relevant to the issue of deliberation in a first degree murder case falls into a least four broad categories." *Id.*

First, there may be direct evidence that the defendant did or said certain things in advance of the act to facilitate the crime. This is "planning evidence." Second, there may be evidence of a pre-existing relationship between the victim and the defendant prior to the murder that provides a motive for the killing. This is "bad-blood evidence." Third, there may be no direct evidence of planning, but the complicated manner in which the defendant carried out the crime shows that the murder could not have been committed as a result of a spur-of-the-moment decision to act. This is "complicated-design evidence." Fourth, there may be evidence that the defendant failed to take action that a person who did not possess a guilty mind would be expected to take. Most often this conduct occurs after the crime

is committed. This is "failure-to-act" evidence.

*Id.*

"To be admissible, evidence must have both logical and legal relevance." *State v. Tripp,* 168 S.W.3d 667, 677 (Mo.App. W.D. 2005). "Logical relevance is established if the evidence 'tends to make the existence of a material fact more or less probable.'" *Id.* (citation omitted). "Legal relevance is determined by balancing the probative value of the evidence against the likelihood that it might result in 'unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness.'" *Id.* (citation omitted). "Evidence is legally relevant if its probative value outweighs its prejudicial effect." *Jackson v. Mills,* 142 S.W.3d 237, 240 (Mo. App. W.D.2004). Trial courts are given broad discretion to exclude marginally relevant evidence "'because of concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant.'" *Kluck v. State,* 30 S.W.3d 872, 879 (Mo.App. S.D.2000) (citation omitted).

Mr. Miller argues the purpose of the offered testimony was to demonstrate he went to the marital home with the intention of killing himself, rather than with the intention of killing Mr. Hughes. Even assuming this is true, it does not negate his deliberating prior to shooting Mr. Hughes. Mr. Miller's suicidal nature does not fall within one of the four, albeit non-exclusive, categories identified in *Roberts.* Moreover, deliberation pertains to Mr. Miller having a, however momentary, deliberate state of mind wherein Mr. Miller considered killing Mr. Hughes when he shot Mr. Hughes. *Jones,* 955 S.W.2d at 12. It pertains to not being under the influence of violent passion aroused by some provocation. *Id.* That Mr. Miller was suicidal in no way impacts this analysis. In fact, he explicitly states evidence of his suicidal ideation was not offered to demonstrate that he was unable to deliberate. Neither does it suggest he was less likely to deliberate. Mr. Miller may not have expected to encounter Mr. Hughes. Once he did, however, his suicidal nature, which suggests Mr. Miller was likely to harm himself, was not a factor in his actions toward Mr. Hughes. The relevance of the excluded evidence, if any, is slight, and the trial court did not abuse its discretion in excluding the offered testimony.

The point is denied, and the judgment is affirmed.

All concur.