

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED106958 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Gloria C. Reno |
| SHAWN M. WALTHER, | ) | |
| | ) | |
| Appellant. | ) | Filed: August 20, 2019 |

### Introduction

Shawn Walther ("Appellant") appeals his convictions for first-degree robbery and armed criminal action. He claims the trial court erred in refusing to instruct the jury on diminished capacity. Finding no error, we affirm.

### Factual Background

Appellant Shawn Walther appeals his convictions for first-degree robbery under § 569.020 and armed criminal action under § 571.015.[1] On June 11, 2018, Appellant was tried by a jury in the Circuit Court of St. Louis County. He was convicted and sentenced to 30 years in the Missouri Department of Corrections. Appellant argues the trial court erred in refusing to instruct the jury on the defense of diminished capacity.

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.

The State adduced the following evidence at trial. Appellant approached a Circle K convenience store clerk, outside on a cigarette break. When the clerk finished smoking, Appellant followed her into the store and asked for all the money in the cash register. The clerk thought Appellant was joking, but Appellant insisted he was serious and pointed a gun at her. The clerk gave Appellant some of the money in the register and tried to close the drawer, but Appellant said, "I want all of it." The clerk gave Appellant all the money, and Appellant left. The clerk called the police and described Appellant's appearance. The store's surveillance camera captured Appellant's entire interaction with the clerk. The clerk testified Appellant did not ask her to call the police.

Appellant fled the scene and approached a Metropolitan Sewer District worker near the River Des Peres less than a mile away from the Circle K. Appellant claimed he had twisted his ankle in the woods nearby and offered to pay the worker $10 for a ride across the river in his work vehicle. The worker thought this was odd considering there were no woods nearby and said he could lose his job if he gave Appellant a ride. The worker noticed a police car nearby and suggested Appellant ask the police for help. Appellant then jumped down into a ditch.

The worker summoned the police officer, who was coincidentally responding to the 911 call from the Circle K. The officer drew her weapon, approached Appellant in the ditch, and told Appellant to raise his hands. Appellant was reluctant to move his hands out from under his sweatshirt, but he eventually complied when a second police officer arrived. The officers arrested Appellant without incident and found a .38 caliber pistol on the ground with a bullet in the chamber. The officers found a large amount of cash in Appellant's right front pocket. The Circle K clerk identified Appellant as the robber at the scene of the arrest. Appellant then apologized to the clerk.

At the police station, Appellant wrote a voluntary statement indicating he was drunk and high on "ice" (methamphetamine) before the offense. Specifically, he "went crazy on the drugs," "kept craving the drugs," and "contemplated how to get more money for the drugs." Appellant stated he took a gun from a friend and walked to the Circle K. Appellant waited for all the cars to leave, entered the store, drew the gun, and demanded all the money in the register. He "took all the money and walked off."

Before trial, the court ordered that Appellant be examined for competency to stand trial and for "mental disease or defect." The mental examiner, Dr. Bridget Graham, offered her expert opinion Appellant did not have a mental disease or defect as defined in the Revised Statutes of Missouri.[2] Subsequently, Appellant filed a "notice of defense of diminished capacity" in which he informed the State of his intent to argue he did not have the requisite mental state for the crime of robbery. Relying on favorable portions of Dr. Graham's testimony and BJC Behavioral Health records, Appellant argued he acted with diminished capacity and his reason for robbing the Circle K was to effectuate his own arrest as a means of suicide prevention.

Appellant's BJC Behavioral Health records indicated a physician had diagnosed him with bipolar disorder two months before the Circle K robbery when he was incarcerated in St. Louis County on an unrelated matter. Appellant failed to disclose to the trial court the diagnosing physician retracted this diagnosis of bipolar disorder after continued observation of Appellant for a year revealed "mild depressive symptoms" but "no … symptoms reaching the threshold of a major psychiatric illness." The diagnosing physician withdrew the diagnosis of bipolar disorder

---

[2] In 2017, the legislature modified § 490.065, enacting § 490.065.2(3)(b) which states: "In a criminal case, an expert witness shall not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone[.]" Neither party raised a statutory issue regarding Dr. Graham's expert testimony. We decline to do so *sua sponte* because "[i]ssues not raised on appeal are considered waived." *State v. Lucas*, 452 S.W.3d 641, 644 (Mo. App. W.D. 2014) (quoting *Brunig v. Humburg*, 957 S.W.2d 345, 348 (Mo. App. E.D. 1997)). Further, we decline to comment on how, or whether, § 490.065.2(3)(b) would affect the admissibility of Dr. Graham's expert testimony.

after Appellant had robbed the Circle K but approximately three years before this pretrial hearing.

In response, the State moved to preclude Appellant's defense because "[b]ased on the opinion of [Dr. Graham] relied on by the defense," Appellant does not suffer from a legally cognizable mental disease or defect that would support an instruction of diminished capacity.

At a pretrial hearing on the State's motion, Appellant argued he had successfully injected diminished capacity because the BJC records and favorable portions of Dr. Graham's testimony showed Appellant still suffered from *some* mental disease or defect. At this hearing, Dr. Graham testified she was aware of the BJC Behavioral Health records. She believed the original diagnosis of bipolar disorder was incorrect and knew the diagnosing physician had retracted it. Dr. Graham believed Appellant had a "borderline personality disorder with antisocial personality traits" rather than a qualifying mental disease or defect. The trial court found Dr. Graham's testimony dispositive on whether Appellant suffered from mental disease or defect under § 552.010 and granted the State's motion to preclude Appellant from proceeding with a diminished-capacity defense.

At trial, Appellant testified he was suicidal at the time of the offense and heard loud thoughts telling him, "If you don't get off the street soon, you're going to end up really hurting yourself or someone else, or something stupid is going to happen." Appellant testified he took his friend's gun so he could commit suicide, but changed his mind and walked to the Circle K to buy a drink. He also stated he was "afraid" of being arrested because he had just committed a crime and left the store. Appellant testified he "freak[ed] out" because he did not have his phone and could not call his girlfriend for help.

At the close of evidence, Appellant requested a mistrial based on diminished capacity and competency. The trial court denied this motion for the same reason it granted the State's motion to preclude Appellant's diminished-capacity defense. Appellant requested a diminished capacity instruction patterned after MAI-CR3d 308.03. Just before the instructions conference, Appellant made an offer of proof consisting of favorable portions of Dr. Graham's testimony and the BJC Behavioral Health records indicating a diagnosis of bipolar disorder. The State objected to Appellant's offer of proof, stating Dr. Graham concluded Appellant did not have a mental disease or defect as required for the diminished capacity instruction and noting Dr. Graham had specifically testified she considered all of the records, including the BJC Behavioral Health records, in her determination. The trial court refused to instruct the jury on diminished capacity. The jury convicted him on all counts. This appeal follows.

### Preservation of Error and Standard of Review

A defendant must specifically object to the trial court's failure to give a proposed instruction before the jury retires to deliberate. Rule 28.03; *State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007); *State v. Wright*, 30 S.W.3d 906, 911 (Mo. App. E.D. 2000). For an allegation of error to be preserved for appellate review, the error must be presented to or decided by the trial court. *State v. Davis*, 348 S.W.3d 768, 770 (Mo. banc 2011). Here, Appellant timely objected to, and preserved for review, the trial court's refusal to instruct the jury on diminished capacity. Therefore, we review for prejudice resulting from the trial court's refusal to give Appellant's requested instruction. *State v. Harding*, 528 S.W.3d 362, 372 (Mo. App. E.D. 2017) (citing Rule 28.02(f); *State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007)).

It is within the trial court's discretion to determine whether to submit a tendered jury instruction. *State v. Johnson*, 244 S.W.3d 144, 150 (Mo. 2008). In determining whether the trial

court erred in refusing to submit the instruction, we view the evidence in the light most favorable to Appellant. *State v. Pulley*, 356 S.W.3d 187, 192 (Mo. App. E.D. 2011) (citing *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002)). "If the evidence tends to establish [Appellant's] theory, or supports finding differing conclusions, [Appellant] is entitled to an instruction on it." *Id.*

**Discussion**

Appellant claims the trial court prejudicially erred in refusing to instruct the jury on diminished capacity because he presented sufficient evidence in his offer of proof to support the existence of a mental disease or defect relevant to the existence of a required culpable mental state. Appellant insists Dr. Graham was not the arbiter of whether he could pursue a defense of diminished capacity and argues the trial court should have allowed the jury to decide whether he suffered from a mental disease or defect that negated his mental culpability. Because Appellant failed to present substantial evidence he suffered from a mental disease or defect as defined in § 552.010, the trial court did not err in refusing to instruct the jury on diminished capacity. *State v. Moore*, 1 S.W.3d 586, 590 (Mo. App. E.D. 1999).

Diminished capacity is a special negative defense which negates the existence of a required culpable mental state. *State v. Gill*, 806 S.W.2d 48, 50 (Mo. App. W.D. 1991); *State v. Walkup*, 220 S.W.3d 748, 754-55 (Mo. 2007). "Evidence of mental disease or defect negating a culpable mental state is simply evidence that the defendant did not have the culpable mental state that is an essential element of the crime." *State v. Knight*, 355 S.W.3d 556, 559 (Mo. App. S.D. 2011) (quoting *Walkup*, 220 S.W.3d at 754-55). "Under the doctrine of diminished mental capacity, the defendant remains fully responsible for his conduct but can be found guilty of only those offenses, if any, of which he is mentally capable." *Gill*, 806 S.W.2d at 50 (citing *State v.*

6

*Shaw*, 636 S.W.2d 667, 673 (Mo. 1982)). "A trial court does not err when it refuses to submit this instruction if no evidence presented to the jury shows [the defendant] suffered from 'mental disease or defect' as defined by § 552.010." *Moore*, 1 S.W.3d at 590.

The submission of a diminished-capacity instruction "is mandatory only if requested by [the defendant] and if supported by evidence of mental disease or defect relevant to the existence of a required culpable mental state." *Knight*, 355 S.W.3d at 559 (quoting *Moore*, 1 S.W.3d at 590; Note 2 on Use of MAI-CR3d 308.03). "A defendant is presumed to be free from mental disease or defect unless he presents substantial evidence to the contrary." *Moore*, 1 S.W.3d at 590 (quoting § 552.030(6)). Section 552.010 defines "mental disease or defect" as "congenital and traumatic mental conditions as well as disease," excluding "abnormalit[ies] manifested only by repeated criminal or *otherwise antisocial conduct*[,]" alcoholism without psychosis, or drug abuse without psychosis. § 552.010 (emphasis added).

The existence of a mental disease or defect must be linked to the existence of a required culpable mental state. Note 2 on Use of MAI-CR3d 308.03; *see State v. Lowe*, 318 S.W.3d 812, 821 (Mo. App. W.D. 2010). Thus, "the existence of a mental disease or defect will not alone suffice to diminish the defendant's criminal responsibility." *Nicklasson v. State*, 105 S.W.3d 482, 484 (Mo. banc 2003). To warrant an instruction of diminished capacity, Appellant must (1) produce substantial evidence of a mental disease or defect as defined by § 552.010 and (2) establish a "causal link" between Appellant's mental disease or defect and his inability to form the requisite culpable mental state. *See Knight*, 355 S.W.3d at 560.

<u>Substantial Evidence of Mental Disease or Defect</u>

Substantial evidence is "evidence putting a matter in issue." *State v. Whipple*, 501 S.W.3d 507, 513 (Mo. App. E.D. 2016) (quoting *State v. Avery*, 120 S.W.3d 196, 200 (Mo. banc 2003)).

In determining whether there is substantial evidence to support giving a defendant's requested jury instruction, the trial court must consider the evidence in the light most favorable to the defendant. *State v. Weems*, 840 S.W.2d 222, 226 (Mo. banc 1992). The first issue before us is whether Appellant produced evidence sufficient to overcome the statutory presumption of full capacity.

At the pretrial hearing on whether Appellant had presented substantial evidence to demonstrate diminished capacity, Dr. Graham unequivocally testified Appellant "did not have a mental disease or defect" under § 552.010 or MAI-CR3d 308.03. Specifically, based on her observation of Appellant, Dr. Graham "ruled out the presence of primary psychiatric illness, like bipolar disorder, and instead believed … the information [she] had gathered … was more consistent with … borderline personality disorder with antisocial personality traits." This was the only competent expert evidence under oath. Although Appellant argues Dr. Graham was not the arbiter of whether Appellant suffered from diminished capacity, "even in the absence of [Dr. Graham's] testimony … , the statutory presumption of sanity, § 552.030(6), ... standing alone, is evidence sufficient to sustain the finding of the trier of fact on this issue." *State v. Bell*, 798 S.W.2d 481, 487 (Mo. App. S.D. 1990) (quoting *State v. Harris*, 774 S.W.2d 487, 492 (Mo. App. E.D. 1989)).

Appellant argues his BJC Behavioral Health records indicate he had a diagnosis of bipolar disorder at the time of the offense.[3] But the diagnosis in these records was not substantial evidence sufficient to compel the trial court to give the requested instruction because the diagnosing physician withdrew this diagnosis. Notably, Dr. Graham considered these records in determining Appellant did not suffer from a statutorily cognizable mental disease or defect.

Appellant insists the jury should have resolved whether Appellant suffered from

---

[3] Appellant entered the BJC behavioral health records under the business records exception to hearsay, § 490.680.

diminished capacity because "it is the exclusive role of the jury to weigh the credibility of the evidence and the trial court must instruct and give verdict directors to support this role." *State v. McPike*, 514 S.W.3d 86, 88 (Mo. App. E.D. 2017) (citing *State v. Jackson*, 433 S.W.3d 390, 399 (Mo. banc 2014)). Appellant argues his testimony and the BJC records created a conflict in the evidence to be "resolved by a jury properly instructed" on diminished capacity.

In *McPike*, we evaluated whether the trial court prejudicially erred in refusing to instruct the jury on a claim-of-right defense, which is a special negative defense like diminished capacity. *Id.* In assessing the prejudicial effect of the trial court's refusal to instruct the jury on diminished capacity, "[o]ur task is to determine only whether there is evidence in the record besides Appellant's subjective belief" from which the jury could conclude Appellant suffered from a mental disease or defect relevant to his culpable mental state. *Id.* at 89. The issue is whether Appellant's BJC records constitute substantial objective evidence that Appellant suffered from diminished capacity beyond Appellant's subjective belief he did. Because the diagnosing physician withdrew his diagnosis of bipolar disorder, the BJC records do not corroborate or strengthen Appellant's subjective assertion he suffered from diminished capacity.

Further, a trial court's refusal to instruct the jury on a special negative defense does not prejudice the defendant if the evidence "directly and irreconcilably contradicts" such a defense. *See McPike*, 514 S.W.3d at 90. The only testifying medical expert unequivocally concluded Appellant does not suffer from a mental disease or defect as defined in § 552.010. This testimony directly and irreconcilably contradicts Appellant's assertion he suffered from a mental disease or defect that negated his mental culpability. Viewing the evidence in the light most favorable to Appellant establishes, at best, Appellant suffered from a personality disorder and not from a statutorily cognizable mental disease or defect.

9

In *Gill*, the Western District held that the trial court did not err in refusing to instruct the jury on diminished capacity because two experts testified the defendant, like Appellant, did not suffer from a mental disease or defect under § 552.010. 806 S.W.2d at 50 (citing *State v. Shaw*, 636 S.W.2d 667, 673 (Mo. 1982)). The defendant argued he was still entitled to the instruction because the experts' testimony "did not foreclose the issue of diminished capacity." *Id.* The court found this argument to be incongruous with case law and the Notes on Use. *Id.* at 50-51. The court found no prejudice from the trial court's refusal to instruct the jury on diminished capacity because the defendant, like Appellant, presented "no substantial evidence" of a mental disease or defect as defined in § 552.010. *Id.* at 51.

Negation of Culpable Mental State

Appellant fails to show a causal link between his evidence of mental disease or defect and negation of his mental culpability. The evidence does not negate Appellant's intent to permanently deprive Circle K of money.

A person commits first-degree robbery when he "forcibly steals property" and is armed with, uses, or threatens to use, a deadly weapon. § 569.020(1). Under § 570.030, "[a] person commits the crime of stealing if he or she appropriates property or services of another with the *purpose to deprive* him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030(1) (emphasis added). Thus, to prove a defendant acted with a culpable mental state for first-degree robbery under § 569.020, the State must prove beyond a reasonable doubt he intended to permanently deprive the victim of property. *State v. Escoe*, 78 S.W.3d 170, 173 (Mo. App. W.D. 2002). Such intent is an essential element of the offense. *Id.*

"Absent a confession by the actor that reveals his … intent, a person's mental state can be known only through the person's actions." *State v. Miller*, 220 S.W.3d 862, 868 (Mo. App. W.D.

10

2007) (quoting *State v. Roberts*, 948 S.W.2d 577, 589 (Mo. banc 1997)). "Evidence of a person's conduct raises inferences that point toward or away from a conclusion that the person possessed a culpable mental state." *Id.* Although Appellant denied he intended to purposely deprive the Circle K of money, Appellant's actions and reasonable inferences therefrom indicate the contrary.

A defendant consummates all elements of the offense of first-degree robbery when he gains control of stolen property, "even for a moment." *Escoe*, 78 S.W.3d at 174 (citing *State v. Bradshaw*, 766 S.W.2d 470, 473 (Mo. App. W.D. 1989)). Here, Appellant seized control of the cash, exited the store, and hid from police. Appellant surrendered the cash only after he was arrested. "Mere argument that [Appellant] lacked the required mental state is insufficient 'when the physical facts and [Appellant]'s conduct renders such [argument] unreasonable and inconsistent with common experience.'" *Lowe*, 318 S.W.3d at 821 (quoting *State v. Stidman*, 259 S.W.3d 96, 104 (Mo. App. S.D. 2008)). The facts, viewed in the light most favorable to Appellant, suggest Appellant intended to permanently deprive Circle K of the money.

This case is distinguishable from *Walkup*, in which the defendant's evidence of mental disease or defect was relevant to the defendant's mental culpability. In the defendant's trial for first-degree murder, the only issue for the jury was "whether [the defendant] had the requisite state of mind – deliberation – which is an element of … first-degree murder." *Walkup*, 220 S.W.3d at 751. The trial court excluded unequivocal expert testimony the defendant suffered from bipolar disorder. *Id.* at 572. The Supreme Court held that exclusion of this testimony was erroneous and prejudicial, and stated:

> [O]n the night of the murder, [Walkup] was very emotional, unstable, and changed from calm to anxious and back again many times. The excluded evidence went directly to the issue of Walkup's mental condition and its effect on his ability to deliberate. If the jury had heard [the expert] testimony, it presumably could

11

have drawn a connection between [the] testimony as to the effects of Walkup's bipolar condition on his state of mind and the behavior he exhibited at the time of the killing. If the jury had accepted the evidence as negating the culpable mental state of deliberation, the jury would have found him guilty of second-degree murder rather than first-degree murder. As it was, the jury deliberated for eight hours without any evidence from the defense. *Id.* at 758.

Unlike in *Walkup*, no expert has testified Appellant suffered from diminished capacity at the time of the crime. Here, the physical facts and Appellant's conduct render Appellant's theory of diminished capacity unreasonable and inconsistent with common experience. Appellant's evidence does not negate Appellant's intent to permanently deprive Circle K of money. Appellant confessed to police he was craving methamphetamine and contemplating "how to get more money for the drugs." The evidence would not lead the jury to find that Appellant was suffering from diminished capacity at the time of the offense. Rather, the evidence suggests Appellant planned to rob the Circle K so he could buy more methamphetamine. Because Appellant demanded and seized control of the money, exited the store, and attempted to evade police, a fact-finder could not reasonably infer Appellant did not intend to keep the money.

While Appellant's alleged suicidal thoughts may have suggested he was likely to harm himself, they did not render him less likely to form the culpable mental state for robbery. *See Miller*, 220 S.W.3d at 868-69. In *Miller*, the defendant appealed his first-degree murder conviction on the ground the trial court erred in excluding expert testimony he suffered from diminished capacity due to suicidal ideation at the time of the murder. *Id.* at 867-68. The defendant claimed he went to his estranged wife's house to commit suicide in front of her, but unexpectedly encountered her boyfriend and shot him in self-defense. *Id.* at 865-66. Although the State was required to prove the defendant deliberated before the shooting, the court found evidence of his suicidal ideation irrelevant as to his mental culpability for murder. *Id.* at 868-869. The court reasoned the defendant's suicidal nature merely suggested he was likely to harm

himself and was irrelevant as to his ability to deliberate about killing the victim. *Id.*

Appellant failed to offer sufficient substantial evidence he suffered from diminished capacity at the time of the crime. *Gill*, 806 S.W.2d at 50; *Moore*, 1 S.W.3d at 590; § 552.030(6). Appellant failed to offer sufficient substantial evidence his alleged mental condition negated his intent to deprive Circle K of its money, an element of the crime he was charged with. *Miller*, 220 S.W.3d at 868-69. Further, the facts and Appellant's conduct are inconsistent with his theory of diminished capacity. *Lowe*, 318 S.W.3d at 821.

### Conclusion

For the foregoing reasons, we find that the trial court did not err in refusing to instruct the jury on diminished capacity. The trial court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Kurt S. Odenwald, J. and
Lisa P. Page, J. concur.

13