

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) WD82097 |
| | ) |
| v. | ) OPINION FILED: |
| | ) December 10, 2019 |
| BRAD LINDSEY, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Jalilah Otto, Judge

Before Division Three:  Alok Ahuja, Presiding Judge, Gary D. Witt, Judge and Anthony
Rex Gabbert, Judge

Brad Lindsey ("Lindsey") appeals his conviction for murder in the first degree, section 565.020,[1] armed criminal action, section 571.015, unlawful use of a weapon, section 571.030, and tampering with physical evidence, section 575.100, following a jury trial in the Circuit Court of Jackson County.  Lindsey alleges that there was insufficient evidence upon which the jury could have convicted him of felony tampering with physical evidence because there was no evidence that Lindsey's actions actually impaired or obstructed his prosecution.  Lindsey also alleges that the circuit court erred in failing to *sua*

___

[1] All statutory citations are to RSMo 2016 as updated through May 14, 2016, unless otherwise noted.

*sponte* issue a corrective instruction to the jury after the State incorrectly argued that the jury had to find Lindsey not guilty of murder in the first degree before it could consider the lesser-included offenses. We affirm.

## Factual Background[2]

On the night of May 14, 2016, Lindsey and D'Adrian Bell ("Victim") were present at the home of DeWayne Lester ("Lester"). There were five other people in the house including Lester. Most were relaxing, listening to music, and drinking. Lindsey drank three to four cups of wine and one beer, but also smoked marijuana and cigarettes dipped in PCP. Lindsey testified that he was intoxicated.

At some point that night, Victim tried to purchase marijuana from Lindsey. Victim and Lindsey disagreed over the price and began to argue. They were in the living room of Lester's home and Lester asked both Lindsey and Victim to leave. Instead, the argument moved to one of the bedrooms. Another guest, Myeisha Shaw ("Shaw"), went to the bedroom to try and calm Lindsey down. The argument, however, escalated into a physical fight. Lindsey told police that Victim swung at Lindsey but missed, which caused Lindsey to fall to the floor and cut his hands. Lindsey then got up and hit Victim three times. Lester came into the bedroom and found both men on the ground fighting. Lester pulled the two men off of each other.

Lester told police that he had separated Victim and Lindsey a couple minutes before the shooting occurred. During that time, Lester again asked the men to leave his home.

---

[2] On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013).

Lindsey pulled out at .38 caliber revolver; Lester said "no, Brad" before Lindsey shot the Victim. Lindsey admitted during his testimony that Victim never had a gun nor threatened to harm him with a weapon.

Lindsey pulled the gun's trigger three times before it fired a bullet. On the fourth pull, the gun fired. Ultimately, Lindsey pulled the trigger five times, successfully firing a bullet only twice, hitting Victim in the neck and chest. Victim died from his gunshot wounds.

Lester called 911 after the shooting. Lindsey fled the house with the gun, his cell phone, and Victim's cellphone. He threw the gun and his clothing into the Missouri River from the Broadway Bridge. He disposed of the cell phones by throwing them out the window while driving on 71 Highway. He then went to eat with his nephew and then returned to his residence.

At trial, Lindsey argued that he acted in self-defense. He testified that he had seizures due to an automobile accident prior to the shooting. To stop the seizures, Lindsey had a vagus nerve stimulator ("VNS") implanted in his chest. He testified that he was concerned during the fighting about Victim hitting his VNS implant and causing it to fail to properly operate.

The State tried Lindsey for murder in the first degree, armed criminal action, unlawful use of a weapon for firing a handgun while intoxicated, and tampering with physical evidence. During trial, Lindsey testified that he felt "very guilty" for tampering with evidence. When asked about firing a weapon while intoxicated, he responded: "Yes. I'm guilty for that." He denied guilt as to murder, claiming self-defense.

3

The jury found Lindsey guilty of murder in the first degree, armed criminal action, unlawful use of a weapon for firing a handgun while intoxicated, and tampering with physical evidence. The judge found Lindsey to be a prior offender and sentenced Lindsey to life in prison without parole for the murder in the first degree, ten years in prison for armed criminal action, four years for unlawful use of a weapon, and four years for tampering with physical evidence. Lindsey's sentences were ordered to run concurrently. This appeal followed.

## Discussion

### I.

Lindsey's first point on appeal alleges that there was insufficient evidence to convict him of Count IV, felony tampering with physical evidence pursuant to section 575.100. Lindsey claims that while he did tamper with physical evidence, to be guilty of *felony* tampering there must be some evidence that the tampering actually impaired or obstructed the prosecution or defense of a felony. He argues that because of the overwhelming evidence immediately connecting Lindsey to the shooting, there was no such evidence of actual impairment or obstruction of either parties' ability to present the case to the jury under these facts.

A claim of sufficiency of the evidence to sustain the conviction need not be raised in a motion for new trial to preserve the issue for appeal. Rule 29.11(d)(3); *State v. Claycomb*, 470 S.W.3d 358, 361 (Mo. banc 2015). "In reviewing a claim that there was not sufficient evidence to sustain a criminal conviction, this Court does not weigh the evidence but, rather, accepts as true all evidence tending to prove guilt together with all

4

reasonable inferences that support the verdict, and ignores all contrary evidence and inferences." *Claycomb*, 470 S.W.3d at 362 (internal quotations omitted). "This Court asks only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty." *Id.* (internal quotations omitted).

Under section 575.100,

1. A person commits the crime of tampering with physical evidence if he:

(1) Alters, destroys, suppresses or conceals any record, document or thing with purpose to impair its verity, legibility or availability in any official proceeding or investigation; or

(2) Makes, presents or uses any record, document or thing knowing it to be false with purpose to mislead a public servant who is or may be engaged in any official proceeding or investigation.

2. Tampering with physical evidence is a class D felony if the actor impairs or obstructs the prosecution or defense of a felony; otherwise, tampering with physical evidence is a class A misdemeanor.

Lindsey's argument focuses on subsection two because he was charged with felony tampering. Tampering with evidence is a class D felony "if the action impairs or obstructs the prosecution or defense of a felony." Lindsey contends that this means the State must prove actual impairment or obstruction of the prosecution or defense's ability to try the case in order to charge the tampering as a felony. The State counters that the proper interpretation of subsection two is that if the underlying crime being prosecuted or defended is a felony--as opposed to a misdemeanor--the tampering is a felony. No proof of actual impairment or obstruction is necessary.

We find that we need not resolve this dispute as to the proper interpretation of the statute because Lindsey waived his sufficiency of the evidence claim by confessing to the

5

charge of felony tampering with physical evidence at trial. Lindsey and his counsel had the following exchange during Lindsey's testimony at trial:

> Q. One of the counts is tampering with evidence. For throwing the stuff away.
>
> A. Yes.
>
> Q. How do you feel about tampering with evidence?
>
> A. Very guilty.
>
> Q. And the other, there's a count of firing a weapon while intoxicated.
>
> A. Yes. I'm guilty for that.

Additionally, in his closing argument, Lindsey's counsel made the following statement:

> You'll go up to the jury room to start your deliberations. You should probably start with the easy verdicts first. Which is Count III and Count IV. The defendant told you on the stand, I'm good for those counts. I'm guilty of Count III and Count IV. So you should probably start your deliberations just fill out Count III and Count IV of guilty.

"A judicial admission is an act done in the course of judicial proceedings that concedes for the purpose of litigation that a certain proposition is true." *State v. Lewis*, 582 S.W.3d 162, 166 (Mo. App. W.D. 2019). "The general rule is that when a defendant makes a voluntary judicial admission of fact before the jury, it serves as a substitute for evidence and dispenses with proof of the actual fact. The admission is conclusive on him for the purpose of the case." *State v. Denzmore*, 436 S.W.3d 635, 643 (Mo. App. E.D. 2014) (quoting *State v. Eacret*, 456 S.W.2d 324, 327 (Mo. 1970)). "[A]n admission made by an attorney in open court during trial which is against the interests of his clients is presumed to be true and courts are warranted in acting thereon." *Denzmore*, 436 S.W.3d at 643 (quoting *State v. Vandiver*, 592 S.W.2d 304, 306 (Mo. App. E.D. 1979)).

6

In *Denzmore*, the defense counsel admitted in his opening and closing statement defendant's guilt regarding the class D felony of leaving the scene of an accident. *Denzmore*, 436 S.W.3d at 643. An essential element of that crime is that the property damage is in excess of $1,000. *Id.* At the close of State's evidence, defense counsel moved for a judgment of acquittal as to leaving the scene of the accident because the State had failed to establish a value as to the property damage. *Id.* at 642. On appeal, the defendant alleged that there was insufficient evidence to find him guilty of leaving the scene of an accident because the State failed to prove the essential element of value of property damage. *Id.* at 641. The defendant conceded that he made judicial admissions as to guilt but he argued that he "did not unequivocally admit that the property damage . . . exceeded $1,000." *Id.* at 643. The Court held that despite not expressly admitting to that element, defense counsel admitted that the defendant was guilty as to the count as charged by the State and, as such, guilt as to that count was waived for appellate review. *Id.*; *See, State v. Howell*, 454 S.W.3d 386, 388 (Mo. App. E.D. 2015) ("An admission of guilt regarding a charged crime can be sufficient to waive the production of evidence regarding all elements of the charged crime.")

Lindsey argues that the judicial admissions made in this case are not dispositive of Count IV for two reasons. First, Lindsey argues that while he may have admitted to the crime of felony tampering with physical evidence, he did not admit to the element of actual impairment or obstruction.[3] On appeal, Lindsey contends that he and his attorney were

---

[3] As noted above, we need not address Lindsey's argument that section 575.100 requires evidence of actual impairment or obstruction. Instead, we presume that he is correct merely for the purposes of addressing the State's claim of waiver.

7

mistaken as to the elements of the crime and although they admitted guilt of the crime itself, Lindsey failed to understand that to be guilty of that crime the State needed to put forth evidence that the prosecution or defense of the case was actually impaired or obstructed. We find this argument is controlled by *Denzmore*. While Lindsey did not admit that his tampering actually impaired or obstructed the prosecution, both he and his counsel admitted to guilt as to Count IV as charged by the State. This naturally included an admission of all of the specific elements of that count as required by the statute. Lindsey was aware that he was admitting guilt to the felony violation of 575.100. He is bound by that admission and cannot now claim on appeal that the State failed to prove one of its essential elements.

Second, Lindsey alleges that there exists an exception to the general rule regarding voluntarily judicial admissions that was recognized by *State v. Eacret*, 456 S.W.2d 324 (Mo. 1970). In *Eacret*, defendant testified at trial, and admitted under oath, that he was guilty of the offense charged. *Id.* at 326. He also authenticated the exhibits to whose introduction he objected as well as the substance of the statement of another implicating defendant. *Id.* Defendant appealed his conviction contending that despite his admissions he was entitled to reversal because the circuit court erred in admitting certain exhibits and testimony. *Id.* The Supreme Court presumed for the purposes of the appeal the defendant's arguments as to the admissions had "some merit." *Id.* The Court discussed the United State Supreme Court's decision in *Harrison v. United States*, 392 U.S. 219 (1968), which seemed to recognize an exception to the general rule of judicial admissions. *Id.* at 327.

8

In *Harrison*, 392 U.S. at 220, the defendant objected to the admission of earlier confessions as illegally obtained. He testified at trial to present his own version of events; he did not admit guilt but placed himself at the scene of the crime. *Id.* On appeal, the introduction of the confession was found to be error and the case remanded. *Id.* at 221. Upon remand and retrial, the original confession was excluded, and the defendant did not take the stand; the prosecution, however, admitted the defendant's testimony from the first trial. *Id.* The United States Supreme Court held that the prior testimony was inadmissible as fruit of the originally illegally obtained confessions. *Id*. at 226.

The Missouri Supreme Court found *Harrison* to be inapplicable because "[t]he Court's opinion seems to be predicated upon a finding that the prosecution had not dispelled an inference that the reason the accused testified was because of the use of the wrongfully obtained confessions." *Eacret*, 456 S.W.2d at 327. The *Eacret* Court found that in its case, even if the evidence complained of was improperly admitted, it could not be inferred that it "impelled defendant's testimony." *Id.* "Unlike the testimony of the accused in the [*Harrison*] case in which there was no admission of the commission of the crime, the defendant in this case judicially admitted his guilt." *Id.* The Court held that "a conviction after a counseled judicial admission of guilt cannot be challenged on appeal on the basis that the admission of guilt was the consequence of some improperly admitted evidence or other trial error." *Id.* at 328.

To the extent that *Eacret* supports an exception to the general rule of waiver, it is limited to the very narrow holding of *Harrison*. This case is easily distinguishable in that there was no inadmissible or even challenged evidence impelling Lindsey's testimony.

9

Even presuming that Lindsey's interpretation of section 575.100.2 is correct, he was not impelled to admit his guilt. He could have testified as to his version of events without admitting guilt. Instead, he voluntarily admitted to the crime, his attorney going so far in closing argument as to instruct the jury that it could find guilt as to Count IV without any deliberation. We see no exception under which Lindsey could escape his admissions.

The other case relied on by Lindsey, *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), is also inapplicable to the facts of this case. In *McCoy*, defense counsel conceded defendant's guilt to capital murder over the defendant's objections. *Id.* at 1507. The Court found that the trial court erred in permitting trial counsel to admit the defendant's guilt over defendant's objection because the decision whether to plead guilty is the client's choice alone. *Id.* at 1511-12. Here, there is no allegation that Lindsey did not voluntarily testify and voluntarily admit his guilt. As the State argues, even if we presume that Lindsey was not actually guilty of felony tampering because his trial counsel misapplied the facts to the law, Lindsey's claim is one of ineffective assistance of counsel, which is not properly considered on direct appeal. *State v. Webber*, 504 S.W.3d 221, 230-34 (Mo. App. W.D. 2016).[4]

Lindsey voluntarily admitted to being guilty of felony tampering with evidence; thus, his claim of insufficient evidence to support his guilt as to that crime is waived. His first point on appeal is denied.

---

[4] To be clear, we do not make any finding regarding the effectiveness of Lindsey's legal counsel as that is not before us and to do so would require a determination that Lindsey's interpretation of section 575.100.2 is indeed correct, which we decline to address. Further, because we do not address the validity of Lindsey's interpretation of the statute, we similarly make no finding regarding the sufficiency of the State's evidence regarding the offense of felony tampering. Lindsey's admission of guilt makes such considerations unnecessary.

10

**II.**

Lindsey's second point on appeal alleges that the circuit court erred when it failed to *sua sponte* intervene and issue a corrective instruction to the jury following the State's closing argument to the jury regarding the lesser-included offenses, which Lindsey contends were improper "acquittal-first" arguments.

When arguing to the jury regarding their consideration of the lesser-included offenses as to Count I, murder in the first degree, the State made the following statements:

> Murder in the second degree.  You only get to if you find that the State has not met the elements of murder in the first degree.

> ****

> Voluntary manslaughter.  You would get to if you find that the State has not proven beyond a reasonable doubt that he's guilty of murder in the first degree or murder in the second degree.

> ****

> [Involuntary manslaughter] you would only get to that if you had already gone through murder in the first degree and murder in the second degree and voluntary manslaughter.

No objections to the State's arguments were raised at trial; therefore, this allegation of error may only be reviewed for plain error.  *State v. Tisius*, 362 S.W.3d 398, 409 (Mo. banc 2012); Rule 30.20.  "Plain error review of a closing argument not objected to will be considered only if there is a sound, substantial manifestation, a strong, clear showing, that injustice or miscarriage of justice will result if relief is not given."  *State v. Johnson*, 284 S.W.3d 561, 573 (Mo. banc 2009) (internal quotation omitted).  "A conviction is reversed due to an improper closing argument when the argument had a decisive effect on the jury's

11

determination." *Id.* (internal quotation omitted).  The appellant bears the burden of proving decisive effect.  *Id.*  "Rarely is plain error relief granted for a closing argument claim, absent an objection, because it may be a strategic decision by counsel." *Id.*

Lindsey argues that these statements improperly instructed the jury that it could only consider the lesser-included offense if the State failed to meet its burden as to a greater offense, which constitutes an improper "acquittal first" argument.  As Lindsey notes, Missouri's instruction regarding murder in the first degree and its lesser-included offenses is not an acquittal first instruction.  *State v. Johnson*, 284 S.W.3d 561, 574 (Mo. banc 2009).  Missouri's instructions allow for the jury to consider a lesser offense if it does "not find the defendant guilty of the greater offense." *Id.*  This allows a jury to consider a lesser-included offense if the jury deadlocked as to a greater offense.  *Id.*

In *Johnson*, the State argued in its closing that "you're considering Murder in the First Degree, which *is only if you decide that he didn't commit Murder in the First Degree that you even get to Murder in the Second Degree*." *Id.* at 574.  The argument incorrectly stated the instruction as to murder in the first degree because the jury did not have to find the defendant did not commit the greater offense to consider a lesser-included offense.  *Id.* The Court found that while the argument was in error, the difference was "minimal" and "[r]egardless, this Court assumes that the jury followed the instruction of the court . . . which was a proper instruction mirroring MAI-CR3d 314.14." *Id.*; *See, also, Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006).

Lindsey notes that the MAI instructions are substantially similar to an acquittal first instruction and thus not a clear instruction regarding the law.  The Missouri Supreme Court

has already addressed such a challenge and found it to be without merit. *State v. Smulls*, 935 S.W.2d 9, 22 (Mo. banc 1996) (citing *State v. Parker*, 886 S.W.2d 908, 923 (Mo. banc 1994); *State v. Wise*¸879 S.W.2d 494, 517 (Mo. banc 1994)). Lindsey does not raise a substantive challenge to these cases other than to contend that they "overlook" the similarities between the MAI and "acquittal first" arguments. The Missouri Supreme Court has repeatedly held that the MAI is not an acquittal first instruction and we need not repeat the Court's reasoning here.

While the State did deviate from the language of the MAI regarding the prerequisites for the jury's consideration of a lesser-included offense in its closing, we do not find that it resulted in manifest injustice or had a decisive effect on the jury verdict.[5] The jury was properly instructed that it need not find Lindsey not guilty of murder in the first degree before considering murder in the second degree. Lindsey bases his argument as to manifest injustice on the premise that there was more evidence to support a finding that Lindsey did not deliberate before shooting the Victim than evidence that he did. As such, the jury should not have found him guilty of murder in the first degree.

"'Deliberation' required for conviction for murder in the first degree is defined as 'cool reflection for any length of time no matter how brief.'" *State v. Miller*, 220 S.W.3d 862, 868 (Mo. App. W.D. 2007) (quoting section 565.002(3)). "The deliberation necessary to support a conviction of first-degree murder need only be momentary; it is only necessary

---

[5] We are at a loss as to why any prosecutor would attempt to make such an argument based on over 25 years of case law from our Supreme Court finding that Missouri's jury instructions on lesser included offenses do not constitute "acquittal first" instructions. This argument was improper and objectionable but was not plain error in this case.

13

that the evidence show that the defendant considered taking another's life in a deliberate state of mind." *State v. Jones*, 955 S.W.2d 5, 12 (Mo. App. W.D. 1997).

In this case, Lindsey had engaged in a prolonged verbal and physical fight with the Victim. The fight was stopped multiple times and Lindsey and the Victim were instructed to leave the residence. Before Lindsey pulled out his gun, the physical altercation had been broken up by Lester. Lester saw the gun and had time to instruct Lindsey not to shoot the Victim. Ultimately, Lindsey pulled the gun's trigger three times before the first bullet was fired. Given the weight of the evidence supporting a finding of deliberation and the elements of murder in the first degree, we cannot say that the State's closing argument had a determinative effect on the jury's verdict or resulted in manifest injustice.

The jury was properly instructed regarding the lesser-included offenses with which Lindsey was charged, and we presume the jury followed the instructions of the court. Thus, Lindsey's second point on appeal is without merit.

### Conclusion

For the reasons stated above, we affirm.

_____
Gary D. Witt, Judge

All concur

14